IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNIE GAIL CALHOON, )<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>    **Defendant.** ) | Case No. CIV-21-06-RAW-SPS |

### REPORT AND RECOMMENDATION

The claimant Johnnie Gail Calhoon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 67). She earned her GED and has previously worked as a CAN, home health aide, convenience store clerk, and cook (Tr. 50, 220). The claimant alleges that she has been unable to work since February 1, 2017, due to diverticulitis, hypothyroidism, anxiety, depression, high blood pressure, psoriasis, separated AC on the right shoulder, varicose veins, previous neck surgery, bilateral carpal tunnel repair both wrists, arthritis in the neck, bone spurs in the neck, arthritis in both wrists/shoulders, abdominal pain, and having teeth removed due to infection (Tr. 219).

## Procedural History

On June 15, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 12, 2019. Her applications were denied. ALJ Luke Liter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 17, 2020 (Tr. 34-52). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he limited her to lifting ten pounds frequently and twenty pounds occasionally, and found she could sit up to six hours in an eight-hour workday, and stand/walk up to six hours combined in an eight-hour workday, but that the work should not include overhead reaching with the bilateral upper extremities. Additionally, he found she could understand, remember, and carry out simple tasks and tolerate occasional contact with coworkers and supervisors, but that public contact should not be part of her duties (Tr. 41). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, small product assembler, inspector/packer, and poultry eviscerater (Tr. 50-52).

**Review**

The claimant raises a number of errors all centered on one issue: her right shoulder impairment. As part of this argument, she contends the ALJ's consistency analysis was flawed, the ALJ gave too much credit to state reviewing physician opinions pre-dating evidence related to her should impairment, the ALJ failed to connect the RFC to her impairment, and the Appeals Council improperly failed to consider evidence related to her shoulder impairment. The undersigned Magistrate Judge finds these contentions unpersuasive.

The ALJ determined that the claimant's status post cervical fusion, right shoulder AC joint separation, depressive disorder, and anxiety disorder were severe impairments, but that any other mentioned impairment was nonsevere (Tr. 17). The relevant medical evidence as to the claimant's right shoulder reveals that the claimant complained of pain in her right shoulder on occasion as far back as 2017, but she nevertheless had normal range of motion even through 2019 (Tr. 386, 408, 428, 479). A January 2018 x-ray of the right shoulder revealed mild AC joint separation with arthritic changes throughout (Tr. 389).

In September 2019, the claimant presented to Integris Medical Center twice, for treatment of chronic right shoulder pain (Tr. 515). On September 9, she reported the pain had worsened over the previous two months and treatment notes reflect she had undergone steroid injection treatments (Tr. 516). Upon exam that day, she had pain to the right shoulder with active and passive range of motion that was worse with abduction, so she was given an injection for pain and a sling (Tr. 518-519). On September 25, she again complained of right shoulder pain and reported she had been unable to get an MRI of the shoulder and that she had misplaced her sling (Tr. 521-522). She again had pain with active and passive ranges of motion, was given another pain injection and was issued a second sling (Tr. 524). She also received treatment at Christian Medical Clinic of Grand Lake on September 12, 2019, where it was noted she needed a referral for an MRI of the shoulder (Tr. 533). On October 10, 2019 she was still awaiting MRI approval (Tr. 561).

On December 19, 2019, the claimant again presented to Integris with complaints of right shoulder pain (Tr. 580). Upon exam, she was noted to have a normal range of motion (Tr. 583). She reported exacerbation of right shoulder pain after helping her husband cut

wood (because their electricity had been cut off) (Tr. 585). On January 6, 2020, she again reported right shoulder pain and was still waiting for approval of the MRI (Tr. 589). She had a normal range of motion, although she exhibited tenderness with palpation over the right shoulder (Tr. 591-592). She again reported losing her sling and was provided with a third one as well as a pain injection (Tr. 592). The record reflects that the claimant was certainly referred for an MRI to determine whether she had a torn rotator cuff, but the MRI was not done (Tr. 598).

On February 23, 2019, Dr. David Wiegman conducted a history and physical examination of the claimant (Tr. 463-471). Upon exam, he noted the claimant had normal grip strength and normal range of motion of the arms and legs, although she had decreased extension of the neck at 30 degrees and pain with movement there (Tr. 464). He also noted right shoulder pain and generalized arthritis (Tr. 465).

State agency physicians found the claimant could perform light work with no additional limitations in March 2019 and October 2019 (Tr. 94-96, 115-117).

At the June 2020 administrative hearing, the claimant testified that she wears a sling, and that she cannot raise her right hand to comb her hair and that she had not combed her hair in three months (Tr. 74). She did not mention her left hand/arm. She further testified that she had not gotten an MRI of her right shoulder because she could not afford it (Tr. 75). She also testified that, because of the sling, she drives one-handed and also has difficulty moving her neck while driving (Tr. 73). She stated that her shoulder had been this bad for several years (Tr. 75).

After the ALJ issued his decision, the claimant submitted records from NeoHealth Tahlequah Family Practice to the Appeals Council. On June 12, 2020, the claimant reported right shoulder pain. Her range of motion was largely normal, but she could not fully extend her right shoulder beyond 120 degrees due to pain, and she had limited internal rotation.[3] *See* Docket No. 15, Ex. 1, pp. 4-5. On August 8, 2020 (after the ALJ's July 17, 2020 opinion), the claimant again presented with right shoulder pain and requesting an MRI. *Id.*, p. 1. The examination note states that the right upper extremity was normal on inspection and there was no joint instability, and palpation was normal, although the claimant reported limited extension due to pain. *Id.*, p. 2. The doctor ordered a shoulder x-ray. *Id.*, p. 3.

In his written opinion at step four, the ALJ summarized the claimant's testimony, as well as the medical and opinion evidence (Tr. 41-50). As to her right shoulder, the ALJ cited the evidence discussed above (Tr. 49-50), and concluded the claimant could perform light work but with no overhead reaching with the bilateral upper extremities due to her prior cervical fusion *and* right shoulder AC joint abnormality (Tr. 48). In contrast to the claimant's testimony, he noted that the record reflected only conservative treatment, right shoulder pain with motion, and only mild AC joint separation with arthritic changes, and therefore found no further physical limitations (Tr. 48). The ALJ found the state reviewing

---

[3] The records in the Administrative Transcript appeared to have printing errors on them, so claimant's counsel submitted them as attachments to his Opening Brief as well. The Government does not challenge these records and appears to concede these records were submitted to the Appeals Council. The undersigned Magistrate Judge therefore refers to the records in Exhibit 1 because they are more legible.

physician opinions partially persuasive, but that the claimant's RFC should have overhead reaching limitations in light of her right shoulder, which was treated with slings (Tr. 49). The ALJ further found that the claimant's statements were not consistent with the medical evidence (Tr. 43).

The claimant contends that the ALJ erred in her RFC assessment because he failed to properly evaluate the state reviewing physician opinions, failed to properly evaluate the consistency of her statements, and that the new evidence before the Appeals Council was not properly considered. The Court finds that the ALJ did not, however, commit any error in his analysis. As discussed above, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue,* 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical

and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform a limited range of light work, with the limitation regarding overhead reaching. The longitudinal evidence in the record does not reflect further limitations, and the ALJ clearly considered all the evidence in the record before him.

Turning to the ALJ's evaluation of the state reviewing physician opinions, the undersigned Magistrate Judge notes that for claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of

examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The claimant's specific complaint is that the state reviewing physicians failed to include reaching limitations and failed to include her right shoulder impairment as any kind of impairment, severe or nonsevere, and the ALJ erred in finding their opinions partially persuasive. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This is insufficient to support further limitations in the record, however. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. In this case, the Court finds that the ALJ set out the appropriate analysis, and

cited evidence supporting his reasons, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record.  Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing these opinions. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.") (citation omitted).

As to the evaluation of the claimant's subjective statements, the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.  Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4]   Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[5]   As part of the

---

[4]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[5]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 43). In making such conclusion, the ALJ's opinion reflects large inconsistencies between the claimant's subjective statements

---

symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

regarding her right shoulder limitations and the evidence of record, including imaging studies of the claimant's right shoulder and numerous largely normal range-of-motion assessments by various physicians (Tr. 43-50).

The claimant also asserts that the evidence she submitted to the Appeals Council, namely the records from NeoHealth Tahlequah Family Practice, were not properly considered. In denying the claimant's request for review, the Appeals Council determined that the June 12, 2020 record would not change the outcome of the ALJ's decision, and that the August 10, 2020 record did not relate to the period at issue because the ALJ's decision was issued in July 2020 (Tr. 2).

The Appeals Council must consider new evidence submitted for the first time on appeal if the evidence is "(1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue,* 638 F.3d 1324, 1328 (10th Cir. 2011). When the Appeals Council decides to consider new evidence that was not presented to the ALJ, the new evidence becomes part of the administrative record and a district court must consider the new evidence when evaluating the Commissioner's decision to deny a claim for disability benefits. *See O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir. 1994). The evidence submitted to the Appeals Council is clearly new; however, the Court finds that it is neither material, nor related to the period on or before the date of the ALJ's decision. Evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003) (*quoting Wilkins v. Sec'y Dep't Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991)). The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater,*

1996 WL 195124, at *2 (10th Cir. April 23, 1996). Here, the new evidence does not appear to implicate a different outcome because June 2020 treatment notes do not indicate a significant, *i. e.*, disabling, worsening of the claimant's right shoulder impairment. Additionally, the evidence is chronologically relevant only if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart,* 470 F.Supp.2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). In this case, the Appeals Council noted the August 2020 records related to the claimant's condition after the date of the ALJ's decision. Thus, the new evidence is either untimely or there is not a reasonable possibility that these medical records would have influenced the ALJ's decision.

When all the evidence is taken into account, the conclusion that the claimant could perform a reduced range of light work is supported by substantial evidence. *See Hill,* 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of h[er] RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [s]he can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d at 949). The ALJ specifically noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citation omitted). The gist of the claimant's appeal is that the

Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**